IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**RUSSELL ALAN CORMIER**                                              **PLAINTIFF**
**ADC #160432**

v.                    No: 4:20-cv-00487 KGB-PSH

**ROBERT L. JONES JR,** *et al.*                               **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Plaintiff Russell Cormier filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on May 7, 2020, while incarcerated at the Arkansas Division of Correction's Grimes Unit, alleging that he was the victim of excessive force (Doc. No. 2). Cormier sues Sergeants Robert L Jones, Jr. and Billy Bradley (the "Defendants").

Before the Court is a motion for summary judgment, a brief-in-support, and a statement of undisputed facts filed by the Defendants, claiming that Cormier did not exhaust available administrative remedies with respect to his claims against them before he filed this lawsuit (Doc. Nos. 18-20).  Cormier filed objections, a statement of disputed facts, and a response (Doc. Nos. 22-23 & 26).  Cormier also filed a motion for summary judgment (Doc No. 24) based on the Defendants' failure to respond to his statement of disputed facts.[1]  Defendants filed a response to Cormier's motion for summary judgment (Doc. No. 25). For the reasons described below, the undersigned recommends that the Defendants' motion for summary judgment be granted and Cormier's motion for summary judgment be denied.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for

---

[1] The failure to respond to a party's statement of disputed facts is not grounds for awarding summary judgment if the record does not show that the movant is entitled to it. *See* Fed. R. Civ. P. 56(e).  Furthermore, to the extent Cormier's statement of disputed facts was intended as a motion for summary judgment, it is premature in that it addresses the merits of this case and discovery is not complete. *See, e.g.*, *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 846 (3rd Cir. 1992) (reversing summary judgment entered because depositions were outstanding); *Murrell v. Bennett*, 615 F.2d 306, 310 (5th Cir. 1980) (reversing summary judgment entered before discovery had started).

summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude

summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

The Defendants argue that they are entitled to summary judgment because Cormier failed to exhaust his administrative remedies as to his claims against them before he filed this lawsuit. *See* Doc. No. 19. In support of their motion, the Defendants submitted Administrative Directive 19-20, the ADC's grievance policy (Doc. No. 20-1); the declaration of Terri Grigsby Brown, the ADC's inmate grievance supervisor (Doc. No. 20-2); and a copy of Cormier's electronic grievance record (Doc. No. 20-3).

### A.  *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211; *Hammett v. Cofield,* 681 F.3d 945, 949 (8th Cir. 2012). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v.*

*Bock*, 549 U.S. at 218. It merely requires compliance with prison grievance procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

Pursuant to Administrative Directive 19-20,[2] inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. *See* Doc. No. 20-1 at 5. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form (Attachment I) within 15 days after the occurrence of the incident. *Id.* at 6. If an inmate believes the matter is an emergency, he or she may indicate that by filling in the date where indicated. *Id.* at 7. Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC." *Id*. at 6. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id*.

A problem solver investigates the complaint and provides a written response at the bottom of the form. *Id.* at 6-7. If an emergency grievance is filed, and the staff member determines that no emergency exists requiring immediate corrective

---

[2] Administrative Directive 19-20 became effective on August 1, 2019. Doc. No. 20-1 at 1.

action, the informal resolution form is processed like a Step One grievance within the normal time limits provided by policy. *Id.* at 7. If the inmate is not satisfied with the resolution or the problem solver does not respond within three working days, an inmate may then complete Step Two of the grievance procedure and submit the form as a formal grievance. *Id.* at 8-9. At that point, the grievance is given a number and logged into the inmate's electronic grievance record. *Id.* at 9.

If the inmate receives no response at Step Two, or if the inmate is not satisfied with the response, the inmate can appeal to the Deputy Director. *Id.* at 12-14. Once the Deputy Director responds or the appeal is rejected, the grievance process is complete. *Id.* at 13. According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days absent an extension or unforeseen circumstances. *Id.* at 14. The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 19.

### B.   *The Complaint & Relevant Grievance*

Cormier alleges that Sergeant Jones used excessive force against him after Jones confronted him for taking an extra tray in violation of ADC policy on November 1, 2019, in the Tucker Unit chow hall. Doc. No. 2 at 4. Cormier alleges that Sergeant Bradley held him down while Jones assaulted him, failing to protect

him from Jones. *Id.* Cormier states that he received a disciplinary the same day and was transferred to the Grimes Unit on November 20, 2019. *Id.* at 5.

In her declaration, Inmate Grievance Supervisor Brown states she reviewed Cormier's grievance file and he did not exhaust the claims asserted in this action. Doc. No. 20-2 at 1. In support of her conclusory statement, she refers to a document attached as Exhibit C, and docketed as Doc. No. 20-3. That one-page document is titled "Inmate Grievances," and identifies one grievance that was received on February 12, 2019, asserting "other complaints against staff." Doc. No. 20-3. It is unclear to the Court what the Inmate Grievance document represents. Does it indicate that Cormier has filed only one grievance? Is the list limited to grievances filed during a specific time frame? Does the absence of a reference to a grievance filed in November 2019 suggest that Cormier did not file one? The February 12 grievance clearly cannot be related to the incident in question here since it was filed months before November 1, 2019. Additional testimony from Brown answering these questions would have been helpful to the Court in interpreting this document.

Brown's conclusory statement that Cormier failed to exhaust his administrative remedies as to the November 1 claims, without more, fails to meet the defendants' burden of proof. For example, in addition to providing no information regarding what the Inmate Grievance document proves, Brown does not state whether Cormier ever filed an informal or a formal grievance related to the

November 1 incident. If he did not, Brown should state so. If he did, the Defendants should provide copies of any such grievance to the Court for review. The Court cannot rely on incomplete information to make findings. To do so would require it to speculate.³

The Defendants' failure to prove that Cormier did not exhaust a grievance relating to the November 1 incident, however, is not fatal to their case in this instance. That is because the parties agree/admit that Cormier submitted one grievance, an emergency grievance, on November 7, 2019, regarding the alleged November 1 assault. Doc. No. 22; Doc. No. 14 at 2 (copy of unnumbered grievance). The grievance states as follows:

> On Nov. 1st in the chow hall at approx. 3:00 pm I Russell Cormier #160432 was physically assaulted by sgt. Jones. With a closed fist he hit me numerous times and then falsified documents stating that I was the aggressor. I am in fact filing charges on Sgt. Jones and I have already written a letter to Attorney General Dustin McDaniel with the information on my case. I will in fact be filing charges on the witnesses on Sgt. Jones behalf as well because they also falsified documents. I feel that my safety is in jeopardy at this unit due to what happened, so therefore I am asking for an emergency transfer and I will deny housing at this unit until I am transferred. I am also requesting for Sgt. Jones to be put on my enemy alert list immediately.

---

³ The Court notes that in their response to plaintiff's motion for summary judgment, the Defendants reference the Inmate Grievance document, stating "ADC Defendants filed an inmate grievance list for Plaintiff that indicates that the only grievance provided a grievance number was received on February 12, 2019." Doc. No. 25 at 3. Without factual testimony from Brown, the Court cannot make such a finding.

The Court first notes that the unnumbered grievance only describes an assault by Jones; there is no mention of Bradley or any claim that an individual failed to protect him from Jones. Doc. No. 14 at 2. The ADC grievance policy requires inmates to name each individual involved. *See* Doc. No. 20-1 at 6; *see also Burns v. Eaton,* 752 F.3d 1136, 1141 (8th Cir. 2014). Because Cormier did not name Bradley or describe his actions in any grievance, his claims against Bradley should be dismissed for failure to exhaust administrative remedies. But even if Cormier named Bradley and described his failure-to-protect claims in this grievance, his claim against Bradley should still fail for the reasons stated below.

The Defendants do not dispute that Cormier submitted an emergency grievance. Instead, they argue that Cormier did not exhaust because he failed to file a formal grievance when he did not receive a timely response to his informal grievance. Cormier does not claim to have filed a formal grievance when he received no response to his emergency grievance. Instead, he argues that because the grievance was an emergency one, it should have gone directly to the unit warden and bypassed the informal stage.[4] He also argues that the grievance procedure was

---

[4] The grievance policy provides that an inmate who believes the matter in issue is an emergency should identify it as such in the unit level grievance form, and Cormier did so. The policy further provides that if the staff recipient of the grievance determines that an emergency does exist, "corrective action shall be taken as soon as possible and within no more than twenty-four (24) hours. If the staff recipient determines that no Emergency exists, the informal resolution form shall be processed within the normal time limits stated within this policy." Doc. No. 20-1 at 7.

unavailable to him because he did not receive a response to his emergency grievance, because he was transferred shortly after he submitted the grievance to prevent him from exhausting the grievance, and because he was threatened after he filed the emergency grievance. Doc. Nos. 22 & 26. Specifically, Cormier states that Warden Page and three other unnamed high-ranking officers came to his punitive isolation cell after he filed his grievance and asked him if he wanted a war. *See* Doc. No. 22 at 2; Doc. No. 26 at 1-2. He claims this threat excused him from the exhaustion requirement.

An inmate need only exhaust *available* administrative remedies. *East v. Minnehaha Cty.*, 986 F.3d 816, 821 (8th Cir. 2021). "Administrative remedies are not available if 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* (quoting *Ross v. Blake*, 136 S.Ct. 1850, 1860 (2016)). Administrative remedies may also be unavailable if prison officials prevent inmates from utilizing the grievance procedures or fail to comply with such procedures. *See Gibson v. Weber*, 431 F.3d 339 (8th Cir. 2005); *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001).

Cormier has failed to establish that the grievance procedure was unavailable to him or that prison officials prevented him from using it. Each of his arguments regarding the availability of the grievance procedure fails, as explained below.

First, the fact that Cormier did not receive a response to his November 7 grievance did not excuse him from completing the remainder of the grievance process. The grievance policy mandates that an inmate proceed to Step Two if he does not receive a timely response to an Emergency or Step One grievance. *See* Doc. No. 20-1 at 7-8. An inmate must then appeal the Step Two response to complete the grievance procedure. *Id.* at 13. Cormier did not complete these steps of the grievance procedure.

Cormier argues that the staff member who received his emergency grievance acknowledged it as such by writing "yes" on the form asking if the complaint was an emergency. Therefore, according to Cormier, it should have been resolved within 24 hours. This argument does not excuse the exhaustion requirement. First, the responding staff member responded "yes" to whether the grievance was "determined to be Step One and/or an Emergency Grievance." Doc. No. 14 at 2. A fair reading of the staff member's response is that he determined the complaint was **either** a Step One **or** an emergency grievance. And regardless of which one the staff member determined the grievance to be, Cormier still was required to proceed to Step Two when he did not receive a timely response to his grievance. He did not do so.

Second, Cormier's transfer to another unit did not impede his ability to exhaust his administrative remedies. When he did not receive a response to the grievance within the time allotted, he had three more working days to proceed to

Step Two according to the grievance procedure.[5] Doc. No. 20-1 at 8. The grievance is dated November 7, 2019. Assuming staff determined it to be a Step One grievance, Cormier should have proceeded to Step Two by November 13, 2019, or by November 15 if weekend days are not counted. Cormier was not transferred to the Grimes Unit until November 20, and therefore to comply with the grievance policy, he could and should have proceeded to Step Two before his transfer. His failure to do so results in his failure to exhaust administrative remedies. Furthermore, the Court notes that the grievance policy provides for continuation of the grievance process if an inmate is transferred. For example, if an inmate is transferred within 15 days of the incident or issue he wishes to grieve, the inmate may begin at Step Two at the new unit. *Id.* at 9. The transfer did not prevent Cormier from exhausting his grievance.

Finally, Cormier alleges that after he filed the grievance in question, and while he was in punitive isolation, Warden Page and other high-ranking officers came to his cell and threatened him by saying "do you want a war with me?" Doc. No. 26 at 1-2. He claims that the warden and other officers intended to threaten or intimidate him from continuing to pursue the grievance. For a failure to grieve to be excused

---

[5] The ADC grievance policy provides that an inmate should receive a timely response to a Step One grievance within three working days. Doc. No. 20-1 at 8. An inmate may proceed to Step Two if he does not receive a timely response by submitting either the yellow or pink copy that was retained by him within three working days from the time the response was due. *Id.*

because of threats, an inmate must show that such threats were sufficient to deter a reasonable inmate of ordinary firmness from grieving an issue. *East v. Minnehaha Cty.*, 986 F.3d at 821.[6] *See also McBride v. Lopez,* 807 F.3d 982, 988 (9th Cir. 2015) ("[T]here must be some basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have understood the prison official's actions to threaten retaliation if the prisoner chose to utilize the prison's grievance system.").

The Court finds that the warden asking Cormier if he wanted a war was not a threat sufficient to deter a reasonable inmate of ordinary firmness from continuing the grievance process. First, there is no allegation that these officials specifically referenced Cormier's grievance about Jones or that they threatened him with any specific action should he continue with the grievance process. Second, neither Defendant was part of the group that made the claimed threat. Third, Cormier does not claim in any pleading that he did not proceed to Step Two because he was threatened or intimidated by these officials. Rather, he indicates that he simply did

---

[6] In *East*, inmate East alleged that officer Baker had secured his chains too tightly, threatened to chain them more tightly when East complained, and "brandished his firearm, warning: 'Don't try to do anything East, cause I'll go John Wayne on your ass.'" 986 F.3d at 819. East also alleged that Baker "pointed his gun at him, showed him the gun's clip of ammunition, and said 'I will shoot you, East.'" The Eighth Circuit noted that it was not clear what prompted these statements and concluded that a "hostile interaction with a guard, without more, does not excuse exhausting the grievance process." *Id.* at 821.

not believe he needed to proceed to Step Two because he had filed an emergency grievance.[7]  Accordingly, there is no indication that a reasonable inmate would have been deterred from completing the grievance process based on the alleged threat.

## IV. Conclusion

Because Cormier did not follow the ADC grievance procedure to complete his administrative remedies with respect to his claims in this lawsuit, the undersigned recommends that the Defendants' motion for summary judgment (Doc. No. 18) be granted and Cormier's motion for summary judgment (Doc. No. 24) be denied.  This case should be dismissed without prejudice for failure to exhaust available administrative remedies.

DATED this 23rd day of March, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] Cormier does not allege that he was told not to proceed with the grievance procedure because he had filed an emergency grievance.  *Cf. Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018) (finding grievance procedure unavailable where guard misled prisoner by advising him not to file a formal grievance until he received a response to his informal grievance).